**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1511-20

THELMA WITHERSPOON
and THE ATLANTIC COUNTY
DEMOCRATIC COMMITTEE,

    Plaintiffs-Appellants,

v.

ATLANTIC COUNTY BOARD
OF COMMISSIONERS,

    Defendant-Respondent.

_____

Argued  September 16, 2021 – Decided September 24, 2021

Before Judges Alvarez, Haas and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0119-21.

Colin G. Bell argued the cause for appellants (Hankin Sandman Palladino Weintrob & Bell, attorneys; Colin G. Bell, on the briefs).

Richard C. Andrien argued the cause for respondent.

PER CURIAM

Plaintiffs Thelma Witherspoon and the Atlantic County Democratic Committee appeal from the Law Division's February 5, 2021 order denying their application for a declaratory judgment that Witherspoon could serve as Commissioner for Atlantic County's Third District pending the results of a special election. We affirm substantially for the reasons set forth by Judge Joseph Marczyk in his thirty-one-page written decision rendered on February 5, 2021.

The parties are familiar with the idiosyncratic facts of this case and with Judge Marczyk's resolution of the legal issues in his comprehensive opinion. Therefore, we need only summarize the most salient history here.

Witherspoon and Andrew Parker were candidates for the Atlantic County Commissioner, District Three position in the November 3, 2020 general election. See In re Election for Atl. Cty. Freeholder[1] Dist. 3 2020 Gen. Election, ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 1). After the election, "the

---

[1] "The . . . Board of Chosen Freeholders has become the Board of County Commissioners and the position of 'Freeholder' has been substituted by 'County Commissioner[].' See L. 2020, c. 67 (eff. Jan. 1, 2021) (amending N.J.S.A. 1:1-2; N.J.S.A. 40:20-1)." Id. at 1 n.1.

A-1511-20

Atlantic County Board of Elections canvassed and counted the votes" and determined that Witherspoon received 286 more votes than Parker. Id. at 4-5.

However, it was soon discovered that "[d]ue to an error by the Office of the Atlantic County Clerk, 554 voters in [one of the townships comprising the Third District] received incorrect vote-by-mail ballots for the" election. Id. at 3. Three hundred and twenty-eight of these "erroneous ballots . . . failed to contain the race for Atlantic County Commissioner . . . , District Three, a race in which the voters were entitled to vote." Id. at 4, 10 (second alteration in original). As a result, these voters were disenfranchised. Id. at 17.

Parker subsequently filed an election contest pursuant to N.J.S.A. 19:29-1(e), which states that an election may be contested "[w]hen illegal votes have been received, or legal votes rejected at the polls sufficient to change the resul[t.]" Id. at 7. Parker alleged that the 328 voters who received an incorrect ballot "had their legal votes rejected" and the election results should be set aside because the 328 rejected votes exceeded the number of votes separating the two candidates. Id. at 7, 10-11.

On January 4, 2021, Judge Marczyk agreed with Parker's argument and entered an order revoking Witherspoon's certificate of election and declaring a vacancy in the Third District Commissioner position. The judge also ordered

that a special election be conducted on April 20, 2021. However, the judge later stayed the special election pending the outcome of Witherspoon's appeal from the January 4 order. Id. at 11.

On June 29, 2021, we affirmed the January 4 order. Id. at 1-2. In so ruling, we determined that "Judge Marczyk did not err" in nullifying the election based on his finding that neither candidate was duly elected because 328 voters were disenfranchised and, as a result, "the court [could not] with reasonable certainty determine who received the majority of the legal vote . . . ." Id. at 13, 24.[2]

After Judge Marczyk nullified the election on January 4, 2021, the members of the Atlantic County Democratic Committee (Committee) met on January 11, 2021, and voted to appoint Witherspoon to fill the vacant Commissioner seat pending the outcome of the special election pursuant to N.J.S.A. 40:41A-145.2. That statute provides:

> In the case of a vacancy occurring with respect to a member of the board of [commissioners] who was elected as the candidate of a political party which at the

---

[2] After our decision was rendered on Witherspoon's appeal, Judge Marczyk granted her request to reschedule the special election for November 2, 2021, which is also the date for the next scheduled general election. Because that election will fill the Commissioner position for the Third District for the remainder of the unexpired term, the dispute between the parties will become moot as of that date.

4                                                                        A-1511-20

last preceding general election held received the largest number of votes or the next largest number of votes in the county for members of the board of [commissioners], for the interim period pending the election and qualification of a permanent successor to fill the vacancy, or for the interim period constituting the remainder of the term in the case of a vacancy occurring which cannot be filled pursuant to section 5 of this act at a general election, the vacancy shall be filled within 35 days by a member of the political party of which the person who vacated the office was the candidate at the time of his election thereto. The interim successor shall be selected by the appropriate political party's county committee in the same manner prescribed in subsections a. and b. of [N.J.S.A.] 19:13-20 for selecting candidates to fill vacancies among candidates nominated at primary elections for the general elections, and a statement of the selection of that successor shall be certified to and filed with the county clerk in the same manner prescribed by subsection d. of that section for certifying statements concerning the selection of such candidates.

[N.J.S.A. 40:41A-145.2 (emphasis added).]

The Committee asserted that Witherspoon "received the largest number of votes" in the nullified election and sent her appointment documents to defendant Atlantic County Board of Commissioners, which rejected her attempt to assume the Commissioner position. Witherspoon and the Committee then filed a verified complaint in lieu of prerogative writ seeking a declaratory judgment that the Committee was entitled to appoint Witherspoon as an interim Commissioner under N.J.S.A. 40:41A-145.2.

5

In support of their position, plaintiffs largely relied upon the Supreme Court's decision in In re Contest of Nov. 8, 2011 Gen. Election of Off. of N.J. Gen. Assembly (2011 Contest), 210 N.J. 29 (2012). In that case, there were two open General Assembly positions for the Fourth Legislative District. Id. at 35-36. After the votes were counted, Paul Moriarity received 21,086 votes, followed by Gabriela Mosquera with 19,907. Id. at 40. The plaintiff, Shelley Lovett, finished third with 14,351. Ibid.

However, Lovett filed an election contest, arguing that the incumbent was not eligible to the office at the time of the election. Ibid.; N.J.S.A. 19:29-1(b). Lovett's challenge was based on the fact that Mosquera had not lived in the Fourth District for one year prior to her election as required by Article IV, Section 1, Paragraph 2 of the New Jersey Constitution. 2011 Contest, 210 N.J. at 40. The trial court found this challenge meritorious and "annul[ed] Mosquera's certificate of election, set[] aside the . . . election in the Fourth District as to Mosquera only, and enjoin[ed] Mosquera from taking office." Id. at 41.

The trial court also determined that because Mosquera received the second-most votes for the position, she should be considered the "incumbent" for one of the two available seats. Id. at 42. Since Mosquera was disqualified,

6

the court found a vacancy and allowed Mosquera's political party the opportunity to fill the seat on an interim basis under N.J.S.A. 19:27-11.2, which governs the procedure for appointing an interim successor to a vacated position in the Legislature.[3]  Ibid.

In 2011 Contest, the Supreme Court affirmed the trial court's decision.  Id. at 38.  In rendering its decision, the Court specifically stated that its ruling was based upon "the circumstances presented here," where there was no doubt as to the number of votes each candidate received.  Id. at 73.  As the Court explained,

> the trial court's remedy of allowing the county committee of Mosquera's political party to select the interim successor for the office will honor the expression of popular will.  The voters selected Mosquera as the second highest vote-getter for the two General Assembly seats that were to be filled through the November 8, 2011 election.
>
> [Id. at 74-75.]

In his February 5, 2021 decision, Judge Marczyk found 2011 Contest readily distinguishable from the case at hand.  Here, unlike in 2011 Contest, there was no clear winner of the election because rejected votes exceeded the difference between the two candidates' total votes.  The judge stated:

---

[3]  The procedure set forth in N.J.S.A. 19:27-11.2 for filling vacant legislative positions is similar to the procedures set forth for Commissioners in N.J.S.A. 40:41A-145.2.

> This court agrees there is a vacancy for the purposes of the case at bar based upon the Supreme Court's decision in the [2011 Contest] case. However, the Supreme Court was careful to limit its interpretation of the term "incumbent" to the circumstances presented in that case. [2011 Contest, 210 N.J. at 73]. It did not determine that all elections declared void pursuant to N.J.S.A. 19:29-1 would result in the challenged candidate's political party filling the seat on an interim basis. In the court's view, the case before the Supreme Court was very different from the circumstances in the case at bar. For example, the trial court in the [2011 Contest] case noted that allowing Mosquera's political party to fill the seat would "effectuate the will" of the voters as she had won the election. Id. at 43. The Supreme Court also applied this same rationale in citing favorably to the arguments of the Attorney General who indicated that allowing Mosquera's political party to select the interim successor for the office would "honor the expression of popular will." Id. at 74-[7]5. Here, however, we do not know which candidate had the support of the popular will of the voters. That is because the court determined there were sufficient legal votes rejected such that it could not decide who won the election. Accordingly, it would not be proper to find . . . Witherspoon to be the "incumbent."
>
> [(emphasis added).]

Judge Marczyk therefore denied plaintiffs' request for declaratory relief.[4]

As the judge explained:

---

[4] On appeal, plaintiffs contend that the judge incorrectly "appl[ied] the standard for an interlocutory injunction to [his] final adjudication on the merits" of their claim. However, although the judge briefly mentioned the clear and convincing

It is difficult to understand how an individual whose election is overturned because of illegal votes counted and/or legal votes that were rejected sufficient to change the outcome of the election could be considered to be the incumbent for the purpose of filling a vacancy in accordance with N.J.S.A. 40:41A-145.2. In fact, this court ultimately revoked the certificate of election and declared a vacancy because it could not determine who prevailed because of irregularities occasioned by the Atlantic County [C]lerk sending out numerous improper ballots.

The judge continued:

Specifically, the court determined there were sufficient legal votes rejected to change the results of the election pursuant to N.J.S.A. 19:29-1(e) and given the number of voters disenfranchised by virtue of the defective ballots, the court concluded the integrity of the election was compromised. Therefore, under N.J.S.A. 40:41A-145.2, this court cannot determine that . . . Witherspoon was the incumbent as she was not "elected" with the "largest number of votes." Accordingly, this case can be distinguished from Mosq[u]era's situation in [2011 Contest] where she indisputably received the largest number of votes. Under these circumstances, the court does not believe it would be proper for the vacancy to be filled as requested by the [p]laintiffs.

This appeal followed.

---

standard for preliminary injunctive relief in an earlier section of his decision, the judge never applied that standard to plaintiffs' request for final declaratory relief. See Crowe v. De Gioia, 90 N.J. 126, 139 (1982)  Therefore, plaintiffs' argument lacks merit. See R. 2:11-3(e)(1)(E).

A-1511-20

On appeal, plaintiffs raise the same arguments they unsuccessfully presented to Judge Marczyk. Our review of a trial court's "interpretation of the law and the legal consequences that flow from established facts" is de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Applying this standard, we discern no basis for disturbing Judge Marczyk's determination and we affirm for the reasons set forth in his thoughtful opinion. As the judge found, there was no "winner" of the November 3, 2020 election for the Commissioner position in the Third District. Therefore, we cannot identify "the appropriate political party[]" to appoint an interim Commissioner under N.J.S.A. 40:41A-145.2. Accordingly, the judge properly ordered a special election to fill the vacant position for the remainder of the term.[5]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] As noted above, the special election will be held on November 2, 2021.

A-1511-20